**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

|  |  |  |
|---|---|---|
| **IN RE: MACK DOUGLAS TROUT,** | ) ) | |
| **Debtor** | ) ) ) | **CASE NO.  05-70594** |
| | ) | **CHAPTER 13** |

**MEMORANDUM DECISION**

The matters before the Court are the confirmation hearing on the Debtor's proposed Chapter 13 Plan, the Trustee's Motion To Dismiss Case With Prejudice, the Debtor's Motion to sell certain property free and clear of liens, the Debtor's several Motions to avoid certain judicial liens against the property proposed to be sold as an impairment of his Virginia homestead exemption, and the Debtor's Motion to distribute funds held by the Trustee to his counsel in payment of charges for legal services rendered in this case in the event the case is dismissed.  These various motions were heard by the Court on June 6, 2005 and have been submitted for decision.

FINDINGS OF FACT

The dominant and unavoidable impression of the Court after hearing Mr. Trout testify before the Court on June 6 is that he is a very angry man.  After taking the witness stand he began, without the need of any question being asked, to tell about the financial woes and wrongs he felt that he had suffered as a result of actions by the City of Roanoke.  When instructed by the Court to wait and answer the questions put to him, he stated that he didn't know if his attorney would ask him the right questions.  Even though his history of ill relations between himself and the City of Roanoke had little to do with the particular matters before the

1

Court, Mr. Trout obviously believed that it did and he was not easily deterred from venting all that was on his mind and heart. While the subject of the Debtor's anger was not helpful to the Court in determining the motions before it, the testimony did provide to it some possible insight into his personality and outlook on life. It is clear from his testimony that he does not have good cause in law for his failure to comply with most of the provisions of this Court's May 23, 2005 order, prepared by his own counsel, which required him to do the following things:

>    1.  To bring plan payments current by 11:00 a.m. on June 6, 2005.
>
>    2.  By June 1, 2005 to provide to the Chapter 13 Trustee certain financial records consisting of "a profit and loss statement for the last quarter and a general ledger or business records to accurately reflect his business's first quarter", "bank statement for January - April 2005", "records . . . of all vehicles, equipment and/or parts purchased during January - April 2005", "proof of post petition mortgage payments", "paystubs for the two previous consecutive pay periods, tax returns for 2004, with all attachments and schedules, proof of insurance, and real estate and/or personal property tax assessment[s]".
>
>    3.  By June 1 he was also required to amend "the petition to reveal all fictitious names" and Schedule A "to reflect the market value of the property as at least $115,000 (the contract price)".

Perhaps the best example of Mr. Trout's self-defeating behavior is that although he did not bring his plan payments current by 11:00 a.m. on June 6, according to his counsel he did bring to the hearing scheduled for that same time the $1,200 necessary to do that very thing. On May 25 his counsel filed an amended Schedule A to reflect the value of the property proposed to be sold, of which Mr. Trout and his former wife, Susan Trout, are the owners, as being $115,000. On May 3, even prior to the date of the May 23 order, Debtor's counsel also filed an amended page to the petition disclosing Mr. Trout's trade name of "Doug's Auto Sales and Body Shop". The Debtor utterly failed, however, to provide to the Trustee the financial records required of him, either by June 1 or at any time thereafter, although in response to gentle prompting from his counsel on

2

the stand he testified that he would be willing to produce bank statements and other financial records within a few days time.   When questioned by counsel for the Trustee as to why he had not provided by the deadline the necessary records, his reply, that he had gotten to the point that he just "didn't care"what happened, seemingly demonstrated either his exasperation with life in general and his bankruptcy case in particular or simply his plain "orneriness".    He also voiced frustration that his efforts to sell the residence property which he and his wife, or perhaps now his former wife, he wasn't sure, own had been unsuccessful.  He blamed this, at least in part, on the actions of the bankruptcy trustee in his wife's prior bankruptcy case.  Mr. and Mrs. Trout have a history of extensive use of the services of this Court over a considerable period of time as demonstrated by the following record of prior cases filed:

| | |
|---|---|
| 89-00131 | Chapter 13 filed by Mack Trout on 1/23/1989, case dismissed 4/28/1989 |
| 89-00533 | Chapter 7 filed by Mack Trout on 3/27/1989, discharged 7/18/1989 |
| 91-00890 | Chapter 13 filed by Susan Trout on 4/1/1991 and subsequently converted to Chapter 7, no asset case, discharge granted 8/19/1991 |
| 96-04083 | Chapter 13 filed by Mack and Susan Trout on 11/27/1996, voluntarily dismissed 5/29/1997 |
| 97-02204 | Chapter 13 filed by Mack and Susan Trout on 6/6/1997, performed under plan and discharge granted on 12/29/2000 |
| 01-00897 | Chapter 13 filed by Mack Trout on 3/5/2001, dismissed 8/15/2002 on trustee's motion for failure to make payments |
| 02-04317 | Chapter 13 filed by Susan Trout on 10/21/02, dismissed on Trustee's motion for non-performance on 2/22/03, plan not confirmed |
| 03-01803 | Chapter 13 filed by Mack Trout on 4/29/2003, relief from stay granted 6/19/2003, dismissed without prejudice 7/15/2003 |
| 03-03948 | Chapter 7 filed by Susan Trout on 9/16/2003, relief from stay granted, no asset case, discharge granted 12/23/2003 |
| 04-03469 | Chapter 13 filed by Mack Trout on August 20, 2004, dismissed 12/29/2004 for failure to comply with Court order |
| 05-70594 | Current Chapter 13 filed by Mack Trout on 2/21/2005 |

In her questioning of the Debtor, counsel for the Trustee demonstrated that either his testimony at the hearing was incorrect or the information contained in the schedules and

statement of affairs was wrong. For example, his answer to question # 1 in his statement of financial affairs was that he earned from wages during 2004 the sum of $30,000. However, he testified that he had no earnings in 2004 and had been kept afloat financially during that time by the assistance of his brothers.

CONCLUSIONS OF LAW

This Court has jurisdiction of this bankruptcy case and the motions before the Court pursuant 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The particular matters before the Court are all "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(A), ((B), (K), (L), and (N).

It is quite clear that the Debtor's history in this and prior cases furnishes sufficient cause for the Debtor's case to be dismissed. This Court's order entered May 23, 2005 provided that dismissal would result from the Debtor's failure to furnish to the Trustee the requisite business records and other financial information by June 1. There is no dispute that he failed to do so and any argument that he had a good excuse for such failure would not survive any realistic appraisal. It is also evident that based on the Debtor's performance in this and prior cases, a dismissal with a significant time restriction pursuant to 11 U.S.C. 349(a) on refiling would be appropriate. *See In re Tomlin*, 105 F.3d 933, 939-40 (4th Cir. 1997)(recognizing the common practice of dismissing bankruptcy cases with prejudice to refiling to sanction the debtor's conduct, which would include a bar on refiling for a period in excess of 180 days); *In re Fooks*, 139 B.R. 623 (Bankr. D. Md. 1992)(dismissing a Chapter 13 case with prejudice upon finding that the debtors demonstrated bad faith under the Fourth Circuit standard set forth in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989); *In re Hundley*, 103 B.R. 768, 771 (Bankr.

E.D. Va. 1989)(serial filings showed a history of abuse of the bankruptcy system and debtor barred from filing for one year); *In re Robertson*, 206 B.R. 826, 831 (Bankr. E.D. Va. 1996)(debtor barred from filing for 417 days); and *In re Gros*, 173 B.R. 774 (Bankr. M.D. Fla. 1994)(debtor barred from filing for two years).   The more difficult question is, notwithstanding the Debtor's cantankerousness and noncompliance with this Court's prior orders, whether the Court, in light of his halting and partial steps to remedy his failures and proceed with his case, should give him another chance to move forward in this case before imposing the sanction of dismissal with a significant restriction on refiling.  *See* 11 U.S.C. §§ 109(g)(2), 349(a).

It is beyond the Court's discernment whether the Debtor's professed desire to continue in his Chapter 13 case extends beyond a simple wish to obtain the benefits of a concluded sale of his residence property and avoidance of judgment liens against same, to a sincere good faith intention to propose, obtain confirmation of, and actually perform a Chapter 13 Plan constituting an appropriate repayment arrangement with his creditors.  His motions to avoid a number of judgment liens against his residence property have been responded to by only one of the affected creditors, the one having the largest amount at stake but also the last one in order of priority of liens against the property.  His counsel has tendered and seeks entry of orders which would avoid the liens of those lien creditors which have failed to appear.  The contract of sale which has been presented to the Court for approval provides for a 6% realtor commission and a $115,000 sale price and Debtor's counsel in effect asks the Court to consider the value of the property for lien avoidance purposes as being the sale price less an assumed 10% factor to cover selling expense.  11 U.S.C. § 522(f) provides that a judicial lien, subject to certain exceptions not relevant here, can be avoided in a bankruptcy case if it "impairs an exemption to

which the debtor would have been entitled under subsection (b) of this section". Section 522(f)(2)(A) furnishes a mathematical test to determine when such a lien "impairs" the debtor's exemption. It provides that

> a lien shall be considered to impair an exemption to the extent that the sum of -
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

The suggestion by Debtor's counsel that the "value" of property for section 522(f) purposes is the net value after applicable expenses of selling it is contrary to most of the case authority[1] which has spoken to the issue and this Court rejects it as well. The Court concludes that the "value" of the property must be that same value used for Schedule A purposes, the fair market value. It is important to note that if a bankruptcy case is dismissed, which has been the norm rather than the exception with respect to the Debtor's prior cases, any lien which has been avoided during such case pursuant to section 522 (and other sections not relevant here) is reinstated unless "the court, for cause, orders otherwise". 11 U.S.C. § 349(b)(1)(B). Of course if a bankruptcy debtor were to get his hands on the money representing the value of the avoided liens and then see his case be dismissed, any remedy of the judgment creditor to recover the proceeds applicable to the avoided lien might well be more theoretical than actual.

---

[1] *See In re Sheth*, 225 B.R. 913 (Bankr. N.D. Ill. 1998) (holding that fair market value is the appropriate valuation standard and liquidation costs and closing costs are not to be deducted from the market value) and cases cited therein; and *In re Clark*, 217 B.R. 177 (Bankr. E.D. Va. 1998) (although not reaching the issue of market value, cites *Windfelder v. Rosen*, 82 B.R. 367, 372 (Bankr. E.D. Pa.1988), which held that a debtor was not entitled to reduce fair market value of collateral by transaction costs for purpose of lien avoidance calculation).

The Debtor seeks court approval not only for the sale of his residential property but also an order which would permit its transfer free and clear of all liens against it.  Such a sale free and clear of a lien or other interest in the property is permissible under the Bankruptcy Code only in five situations:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest:
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1) - (5).  In this case the aggregate total of the debt claimed by the mortgagee and the judgment liens exceeds the value of the property.  Applicable nonbankruptcy law does not permit the sale of the property free and clear of the judgment liens.  Although only one of the judgment creditors has responded either to the motions to avoid judgment liens and motion to sell fee and clear of all interests, such failure to respond is not the equivalent of the actual consent by the affected creditors to such action.  Counsel for the Debtor has suggested that the pendency of the motions to avoid liens as impairing the Debtor's homestead exemption renders such liens in dispute within the meaning of § 363(f)(4).  If it were clear that the Debtor is entitled at this time to avoid the judgment liens in question, the Court might find this argument persuasive, but such is not the case here.  The Court has concluded, as noted in the preceding paragraph,  that it would not avoid judgment liens which affect or "impair" a debtor's transaction expense in selling property claimed as partially exempt pursuant to the Virginia homestead exemption, but only those which impair the permissible amount of the actual exemption..  Moreover, it believes that this subsection [*i.e.*, (4)] of § 363 refers to liens which are in genuine

dispute on the merits, such as a claim of satisfaction of the debt represented by the judgment or expiration of the applicable statute of limitations for enforcement. In view of the Debtor's history in this and prior cases, the Court will not consider any ruling which would result in judgments being avoided and sale proceeds turned over to the Debtor prior to entry of a discharge. Finally, subsection (5), which concerns a compelled money satisfaction of an interest, refers to a situation where there are sufficient proceeds to satisfy the particular interest in question and where the nature of the interest is something other than just a simple judgment for money docketed against the property proposed to be sold free and clear of such interest.

      A bankruptcy court by its nature is one which provides another chance to someone who has encountered financial problems, sometimes, in the discretion of the Court, even where the particular debtor by his actions in the present case or prior cases may have forfeited any claim to be deserving of such consideration. It is not unprecedented for the Court to allow additional opportunities to perform even when the excuse for the failure to comply with clear requirements is flimsy or even non-existent. A successful sale of the Debtor's residence property may be in the best interests of not only Mr. and Mrs. Trout, but also his or their judgment creditors, perhaps the unsecured creditors as well. The Court's ruling, taking into account the unusual circumstances of this case and the interests of the creditors which may be served by permitting a sale to go forward and giving the Debtor one additional opportunity to make a full disclosure of his income, assets and financial condition, is as follows:

1. The sale of the Debtor's residence property will be approved, but it will only be free and clear of the various liens against it if the express written consent to the sale price and other terms of sale of such creditors is obtained, except that the consent of any lien creditor whose lien

interest will be satisfied in full out of the sale proceeds consistent with the priority of such creditor's claim under applicable Virginia law[2], or for which an escrow will be set aside for the full amount claimed to be due by such creditor until the amount of such entitlement can be determined by this court or another court of competent jurisdiction, will not be required.

    2.  The Debtor's motions to avoid judgment liens will be preliminarily denied but will be continued for further consideration at such time as the Debtor may obtain in this case a discharge under Chapter 13 or other chapter of the Bankruptcy Code.

    3.  Any proceeds of the sale not disbursed at closing to lien creditors entitled thereto will be placed in an escrow account satisfactory to the unpaid lien creditors and counsel for the Debtor to be held pending final determination of the motions to avoid lien.  If this case is dismissed before the Debtor obtains a discharge, such escrow account will be paid over to the Clerk of the Circuit Court of the City of Roanoke to be held pending determination by such Court of the entitlement thereto by the lien creditors.  The liens of any unpaid judgment creditors shall be transferred and attach to such escrow account.  This paragraph shall not be construed to require the escrow of net sale proceeds to which Mrs. Susan Trout may be entitled and no lien creditor has a colorable claim thereto.

    4.  The Debtor shall comply with all outstanding unsatisfied requirements of him set forth in this Court's May 23, 2005 order within fifteen (15) days hereafter or appear and  SHOW CAUSE before this Court on July 7, 2005 at 11:00 a.m. why this case should not be dismissed pursuant to the Trustee's existing motion.

---

[2] The Court notes that the motions to avoid judgment liens filed by the Debtor fail to indicate whether the judgments in question are against only the Debtor or jointly against both Mr. and Mrs. Trout.

5.  In the event this case is dismissed hereafter for any reason prior to the Debtor receiving a discharge herein, the Debtor shall be restricted pursuant to 11 U.S.C. §349(a) from filing any new petition in this Court for a period of twenty-four (24) months following the date of such dismissal.  In the event this case is converted to Chapter 7, the Debtor shall be restricted from filing a new petition in this Court for a period of twenty-four months following the date that a Chapter 7 discharge is granted.

6.  The motion to distribute to Debtor's counsel the amount due him for services rendered to the Debtor in the event this case is dismissed prior to a confirmation order being entered is granted.

An order containing the foregoing ruling of this Court shall be entered contemporaneously with the signing of this decision.

This 17th day of June, 2005.

/s/ William F. Stone, Jr.
UNITED STATES BANKRUPTCY JUDGE